**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **SYLVIA WILLIAMS**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NELSON MULLINS RILEY & SCARBOROUGH LLP,**<br><br>Defendant. | **CASE NO.** 3:26-cv-4770-MGL<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Sylvia Williams ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins" or "Defendant"). Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a full-service law firm headquartered in Columbia, South Carolina, providing litigation, healthcare, corporate, regulatory, and other legal services.[1,2]

3. As such, Defendant stores highly sensitive personally identifiable information ("PII") and protected health information ("PHI")—together, "Private Information"—concerning

---

[1] Nelson Mullins, https://www.nelsonmullins.com/ (last visited October 9, 2026).
[2] Nelson Mullins, Contact Us, Corporate Information, https://www.nelsonmullins.com/contact (last visited October 9, 2026).

individuals whose records it obtains in the course of its legal representations. On information and belief, Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in the data breach reported in October 2026 (the "Data Breach").

4. It is unknown for precisely how long the cybercriminals had access to Defendant's network before the Data Breach was discovered. On information and belief, Defendant failed to use effective means to prevent, detect, stop, or mitigate the unauthorized access to its systems, thereby allowing cybercriminals to obtain the Private Information in its custody.

5. On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendant's failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

6. Plaintiff is a patient of Columbus Regional Healthcare System ("Columbus Regional"), which retained Defendant in litigation arising from Columbus Regional's 2023 data breach. On information and belief, Defendant obtained Plaintiff's Private Information in connection with that representation, and her Private Information was compromised in Defendant's Data Breach. She brings this class action on behalf of herself and all others harmed by Defendant's misconduct.

7. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Once cybercriminals acquire confidential records, the affected individuals cannot retrieve every copy or control how their information will be used, disclosed, or sold.

## PARTIES

8. Plaintiff Sylvia Williams is a natural person and a citizen of North Carolina. She resides in Whiteville, North Carolina, and is domiciled in North Carolina, where she intends to remain.

9. Defendant Nelson Mullins Riley & Scarborough LLP is, on information and belief, a limited liability partnership organized under South Carolina law, with its principal place of business at 1320 Main Street, 17th Floor, Columbia, South Carolina 29201.[3]

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, and, on information and belief, the proposed Class includes more than 100 members. Minimal diversity exists because Plaintiff is a citizen of North Carolina and Defendant is a citizen of South Carolina. For purposes of § 1332(d), Defendant, an unincorporated association, is a citizen of the state where it has its principal place of business and the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10).

11. This Court has personal jurisdiction over Defendant because Defendant is organized under South Carolina law, is headquartered in South Carolina, and regularly conducts business in South Carolina, including the business and data-handling activities giving rise to this action.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant's principal office is in this District and, on information and belief, a substantial part of

[3] Nelson Mullins, Contact Us, Corporate Information, https://www.nelsonmullins.com/contact (last visited October 9, 2026).

the events and omissions giving rise to Plaintiff's claims occurred here. Assignment to the Columbia Division is proper under Local Civil Rule 3.01 because Defendant maintains its headquarters in Columbia, Richland County, and conducts business relating to the events and omissions alleged in this action in this Division.

## BACKGROUND

***Defendant Collected and Stored the Private Information of Plaintiff and the Class***

13. Defendant is a national law firm with more than 1,000 attorneys, policy advisors, and other professionals and offices throughout the United States. Its work includes litigation and legal services for healthcare entities.[4]

14. As part of its business, Defendant receives and maintains Private Information concerning thousands of individuals, including patients of healthcare entities it represents. On information and belief, Defendant received and maintained patient records and other sensitive information from Columbus Regional in connection with its representation concerning the 2023 Columbus Regional data breach.

15. In collecting and maintaining this Private Information, Defendant undertook to safeguard the data in accordance with its agreements, internal policies, and applicable state and federal law. The highly confidential nature of patient records made the need for reasonable safeguards especially clear.

16. Under applicable state and federal law, businesses like Defendant have duties to protect Private Information in their custody and to provide appropriate notification when that information is compromised.

---

[4] Nelson Mullins, https://www.nelsonmullins.com/ (last visited October 9, 2026).

17. Defendant recognizes the obligations associated with its handling of confidential records. In its publicly available Privacy Policy, Defendant acknowledges that it processes information relating to individuals during its legal representation of clients and that such processing is governed by client agreements and professional responsibilities.[5]

18. Specifically, Defendant describes its processing of personal information during legal representations as "subject to our client agreements and professional responsibilities."[6]

***Defendant's Data Breach***

19. On or about October 5, 2026, a cyberattack affecting Defendant was reported through a listing attributed to Silent Ransom Group on the data-breach tracking website Ransomware.live. On information and belief, cybercriminals obtained unauthorized access to Defendant's systems and exfiltrated confidential records, including Private Information belonging to Plaintiff and Class Members.[7]

20. The precise dates of the unauthorized access, the means by which the attackers entered Defendant's systems, and the full scope of the information taken are within Defendant's knowledge and control.

21. On information and belief, the compromised records included individuals' names, dates of birth, Social Security numbers, contact information, financial information, and medical information. The particular combination of information affected may vary by individual.

---

[5] Nelson Mullins, Privacy Policy (effective February 24, 2026), https://www.nelsonmullins.com/privacy_policy (last visited October 9, 2026).
[6] Nelson Mullins, Privacy Policy (effective February 24, 2026), https://www.nelsonmullins.com/privacy_policy (last visited October 9, 2026).
[7] Ransomware.live, Nelson Mullins Riley & Scarborough / SilentRansomGroup, https://www.ransomware.live/id/TmVsc29uIE11bGxpbnMgUmlsZXkgJiBTY2FyYm9yb3VnaEBTaWxlbnRSYW5zb21Hcm91cA (listing reported October 5, 2026).

22. On information and belief, the Data Breach exposed Private Information of individuals whose records Defendant received in its legal practice, including Columbus Regional patients whose information Defendant obtained in connection with the earlier healthcare breach litigation.

23. Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the proposed Class can be ascertained from information in Defendant's custody and control, and the proposed Class includes more than one hundred members.

24. Defendant has not provided Plaintiff with an individualized accounting of the records affected, the dates of unauthorized access, or the measures necessary to address the compromise of her Private Information.

25. The lack of timely, adequate information deprives affected individuals of the opportunity to make fully informed decisions about measures to mitigate their injuries and protect against misuse of their Private Information.

26. The acquisition of confidential patient and identifying information by cybercriminals creates a present, continuing, and significant risk of identity theft, fraud, and other misuse.

27. On information and belief, Defendant failed its duties when its inadequate security practices allowed the Data Breach. Defendant failed to prevent unauthorized access, detect the intrusion in time to stop the theft, and protect the Private Information entrusted to it, causing widespread injury and damages.

28. After-the-fact security measures cannot retrieve all copies of information already taken by cybercriminals or ensure that Plaintiff's and Class Members' Private Information will be protected from additional exposure.

29. Defendant controls the information needed to determine the full scope of the Data Breach, including which records were accessed or stolen and when. Without adequate disclosure of that information, affected individuals cannot fully assess the consequences of the intrusion.

30. Credit monitoring alone cannot compensate Plaintiff and Class Members for the loss of confidentiality and control over their medical records and other Private Information, nor can it prevent every form of identity theft or misuse of that information.

31. Because of Defendant's Data Breach, the sensitive Private Information of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

32. The Data Breach occurred against a backdrop of specific warnings that law firms and their confidential client records were targets of data-theft and extortion attacks. Defendant's own work involving data-breach litigation made the consequences of inadequate data protection particularly foreseeable.

***Silent Ransom Group & the Dark Web***

33. The reported listing identifies the cybercriminals responsible for the attack as Silent Ransom Group. On information and belief, that group obtained Plaintiff's and Class Members' Private Information from Defendant's systems.[8]

[8] Ransomware.live, Nelson Mullins Riley & Scarborough / SilentRansomGroup, https://www.ransomware.live/id/TmVsc29uIE11bGxpbnMgUmlsZXkgJiBTY2FyYm9yb3VnaEBTaWxlbnRSYW5zb21Hcm91cA (listing reported October 5, 2026).

34. Silent Ransom Group is a known data-theft and extortion actor. On May 26, 2026, the FBI issued an advisory warning that the group had consistently targeted United States law firms since spring 2023.[9]

35. The FBI described social-engineering schemes in which attackers impersonate information-technology personnel to gain access to computers and steal data, followed by threats to disclose or sell the stolen information. The advisory explained that the group's extortion operations do not depend on encrypting victims' systems.[10]

36. As explained by the global cybersecurity firm BlackFog, the modus operandi of cybercriminals like Silent Ransom Group is to exfiltrate private information through a data breach and then "post it on forums on the Dark Web where it will be sold for profit."[11]

37. Indeed, the Federal Trade Commission has explained that "data stolen from businesses ends up on the dark web where criminals buy and sell it to commit fraud, get fake identity documents, or fund their criminal organizations."[12]

38. Thus, on information and belief, the Private Information of Plaintiff and the Class has already been leaked or sold by cybercriminals Silent Ransom Group on the Dark Web or will be leaked or sold imminently by cybercriminals Silent Ransom Group on the Dark Web.

---

[9] Federal Bureau of Investigation, Silent Ransom Group Impersonating IT Personnel through Social Engineering, FLASH-20260526-01 (May 26, 2026), https://www.ic3.gov/CSA/2026/260526.pdf (last visited October 9, 2026).

[10] Federal Bureau of Investigation, Silent Ransom Group Impersonating IT Personnel through Social Engineering, FLASH-20260526-01 (May 26, 2026), https://www.ic3.gov/CSA/2026/260526.pdf (last visited October 9, 2026).

[11] Brenda Robb, After the Data Breach – What Happens to Your Data, BlackFog (July 27, 2025) https://www.blackfog.com/after-the-data-breach-what-happens-to-your-data/.

[12] John Krebs, The dark web: What your business needs to know, Fed. Trade Comm. (Oct. 17, 2017) https://www.ftc.gov/business-guidance/blog/2017/10/dark-web-what-your-business-needs-know.

***Plaintiff's Experiences and Injuries***

39. Plaintiff Sylvia Williams has been a patient of Columbus Regional for more than ten years and most recently received care there in 2024.

40. In connection with that healthcare relationship, Plaintiff furnished Columbus Regional with her name, date of birth, Social Security number, medical information, address, telephone number, email address, and banking information.

41. Plaintiff received notice that her information was affected by Columbus Regional's 2023 data breach. Defendant represented Columbus Regional in litigation concerning that breach.

42. On information and belief, Defendant obtained and maintained Plaintiff's Private Information from Columbus Regional in connection with that representation, including records identifying Plaintiff as an affected patient.

43. Plaintiff furnished her Private Information for limited healthcare purposes with the reasonable expectation that the entities receiving and maintaining that information would use reasonable measures to protect it. On information and belief, Defendant obtained and continues to maintain her Private Information and has a continuing duty and obligation to protect it from unauthorized access and disclosure.

44. Plaintiff reasonably expected that confidential records transmitted in connection with legal services for her healthcare provider would remain protected and would not be exposed to cybercriminals.

45. As a result of Defendant's Data Breach, Plaintiff suffered an additional, unauthorized compromise of her Private Information and lost control over the confidential records maintained by Defendant.

46. Thus, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

47. On information and belief, the Data Breach compromised Plaintiff's Private Information in Defendant's custody.

48. The Data Breach requires Plaintiff to remain vigilant and undertake protective measures, including reviewing financial accounts and credit reports and monitoring for identity theft and misuse of her medical information.

49. Plaintiff suffered actual injury from the exposure and theft of her Private Information—which violates her rights to privacy.

50. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

51. Plaintiff also lost the benefit of the confidentiality and data-security protections that, on information and belief, Defendant undertook to provide for her records when it accepted those records from Columbus Regional.

52. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

53. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

54. Today, Plaintiff has a continuing interest in ensuring that her Private Information—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

55. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey." Therein, Cisco reported the following:[13]

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[14]

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[15]

c. 89% of consumers stated that "I care about data privacy."[16]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[17]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[18]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[19]

---

[13] Privacy Awareness: Consumers Taking Charge to Protect Personal, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[14] Id. at 3.
[15] Id.
[16] Id. at 9.
[17] Id.
[18] Id.
[19] Id. at 11.

***Plaintiff and the Proposed Class Suffered Common Injuries and Damages***

56. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—injuries, including the loss of confidentiality and control over their Private Information and its exposure to cybercriminals. They also suffered, or face a substantially increased risk of suffering, the following injuries:

a. loss of the opportunity to control how their Private Information is used;

b. diminution in value of their Private Information;

c. compromise and continuing publication of their Private Information;

d. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identity theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen Private Information; and

h. continued risk to their Private Information—which remains in Defendant's possession—and is thus at risk for future breaches so long as Defendant fails to take appropriate measures to protect the Private Information.

***Substantially Increased Risk of Identity Theft and Fraud***

57. Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

58. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2(a).

59. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 16 C.F.R. § 603.2(b).

60. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market (aka the Dark Web) to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

61. The "Dark Web" is an unindexed layer of the internet that requires special software or authentication to access. Criminals in particular favor the Dark Web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, Dark Web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the Dark Web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion. This prevents Dark Web marketplaces from being easily monitored by authorities or accessed by those not in the know.[20]

62. On information and belief, the Private Information of Plaintiff and Class Members have been or will be offered for disclosure or sale on the Dark Web. Information acquired by cybercriminals may also reach other unauthorized recipients who use it for targeted marketing or additional scams without the approval of Plaintiff and Class Members.

---

[20] What Is the Dark Web?, Experian, https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last visited July 9, 2025).

63. Theft of Social Security numbers also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the victim has suffered the harm.

64. In particular, the theft of Social Security numbers—in combination with other Private Information (e.g., name, address, date of birth)—provides cybercriminals with a "skeleton key" to commit rampant fraud and identity theft.

65. For example, cybersecurity expert Jim Stickley explained to Time Magazine that "[i]f I have your name and your Social Security number, and you haven't gotten a credit freeze yet, you're easy pickings . . . With that, you can do whatever you want . . . You can become that person." For context, Jim Stickley is a "penetration tester" who is employed by businesses "to infiltrate their systems in order to find flaws they can fix before the bad guys exploit them."[21]

66. There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

---

[21] Patrick L. Austin, 'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say, Time Magazine (Aug. 5, 2019) https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

67. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[22]

68. It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Private Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

69. Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

70. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

71. Identity thieves can also use an individual's personal data and Private Information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a

---

[22] John W. Coffey, Difficulties in Determining Data Breach Impacts, 17 J. Systemics, Cybernetics & Informatics 9 (2019) http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[23]

72. One example of criminals piecing together bits and pieces of compromised Private Information to create comprehensive dossiers on individuals is called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. With "Fullz" packages, cybercriminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. For example, they can combine the stolen Private Information with unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).[24]

73. The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to other data about Plaintiff and the Class that is available

---

[23] Identity Theft and Your Social Security Number, Social Security Administration, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited July 9, 2025).

[24] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. See, e.g., Brian Krebs, Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

on the internet. Criminals can combine stolen records with information acquired from other sources and repeatedly sell the resulting dossiers to unscrupulous operators. This practice increases the danger of misuse created by Defendant's exposure of Plaintiff's and Class Members' Private Information.

74. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[25]

75. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good." Defendant's failure to provide Plaintiff and Class Members with prompt, adequate information about the scope of the Data Breach deprives them of the earliest opportunity to take appropriate measures to protect their Private Information and mitigate the resulting harm.

76. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

77. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

---

[25] 2019 Internet Crime Report (Feb. 11, 2020) Federal Bureau of Investigation, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited July 9, 2025).

78. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

79. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

80. The Identity Theft Resource Center reported 3,158 data compromises and approximately 1.35 billion victim notices in 2024, illustrating the widespread and continuing threat to personal information.[26]

81. Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[27]

82. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[28]

83. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

---

[26] 2024 Data Breach Report, Identity Theft Resource Center (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[27] Ben Kochman, FBI, Secret Service Warn of Targeted Ransomware, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.
[28] See Maria Henriquez, Iowa City Hospital Suffers Phishing Attack, Security Magazine (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 11, 2023).

***Defendant Could Have Prevented the Data Breach***

84. Data breaches are preventable. Indeed, the American Bar Association published a treatise titled the Data Breach and Encryption Handbook wherein the author explained that:[29]

a. "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[30]

b. "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[31]

c. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."[32]

***Defendant Failed to Follow FTC Guidelines***

85. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

---

[29] Lucy L. Thomson, Despite the Alarming Trends, Data Breaches Are Preventable, Data Breach and Encryption Handbook (2012).
[30] Id. at 17.
[31] Id. at 28.
[32] Id.

86. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business. There, the FTC identified core principles and practices businesses should follow to safeguard personal information, including:[33]

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

87. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

88. Furthermore, the FTC explains that reasonable security practices include measures to:

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

89. The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an

[33] Protecting Personal Information: A Guide for Business, Fed Trade Commission (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

90. In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its data subjects' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

91. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

92. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

93. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04)

and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

94. These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

95. On information and belief, Defendant acted as a business associate of Columbus Regional when it received and maintained PHI in the course of providing legal services to that healthcare provider. HIPAA's definition of a business associate expressly includes a person providing legal services to a covered entity when those services involve disclosure of PHI. 45 C.F.R. § 160.103.[34]

96. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[35]

97. HIPAA requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic PHI. Its business-associate provisions also require safeguards and restrictions governing the use and disclosure of PHI entrusted to a business associate.[36]

---

[34] U.S. Department of Health and Human Services, Business Associates, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/business-associates/index.html (last visited October 9, 2026); 45 C.F.R. §§ 160.103, 164.502(e), 164.504(e).
[35] See 45 C.F.R. § 160.103 (defining protected health information and individually identifiable health information).
[36] See 45 C.F.R. §§ 164.306, 164.308, 164.310, 164.312, 164.502(e), 164.504(e).

98. On information and belief, the Data Breach resulted from a combination of inadequacies showing that Defendant failed to comply with applicable safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a. failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e. failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. failing to identify and respond to suspected or known security incidents and mitigate their harmful effects, in violation of 45 C.F.R. § 164.308(a)(6);

h. failing to implement an appropriate security-awareness and training program for its workforce, in violation of 45 C.F.R. § 164.308(a)(5); and

i. failing to implement appropriate physical safeguards and required policies and procedures to protect electronic PHI, in violation of 45 C.F.R. §§ 164.310 and 164.316.

99. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

**CLASS ACTION ALLEGATIONS**

100. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the data breach of Nelson Mullins Riley & Scarborough LLP reported in October 2026 (the "Class").

101. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, Defendant's officers and partners, any successor or assign, and any Judge who adjudicates this case, including that Judge's staff and immediate family.

102. Plaintiff reserves the right to amend the class definition.

103. Plaintiff and Class Members constitute a well-defined community of interest—they are similarly situated persons and were similarly affected and damaged by the alleged conduct of Defendant.

104. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

105. **Ascertainability.** All members of the proposed Class are readily ascertainable from information in Defendant's custody and control, including the affected records, its investigation of the Data Breach, and information identifying the individuals to whom the compromised records relate.

106. **Numerosity.** The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes more than one hundred members. Its precise size can be determined from Defendant's records.

107. **Typicality.** Plaintiff's claims are typical of Class Members' claims because each arises from the same Data Breach, the same alleged violations by Defendant, and the same failure to reasonably protect Private Information entrusted to Defendant.

108. **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

109. **Commonality and Predominance.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant was negligent in maintaining, protecting, and securing Private Information;

d. if Defendant breached contract promises to safeguard Plaintiff's and the Class's Private Information;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. whether Defendant provided timely and adequate information concerning the Data Breach;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. whether Plaintiff and the Class are entitled to damages, restitution, declaratory relief, and/or injunctive relief.

110. **Superiority.** A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device

provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

111. Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate respecting the Class as a whole under Rule 23(b)(2). Common questions predominate, and class treatment is superior, under Rule 23(b)(3).

## COUNT I
**Negligence**
(On Behalf of Plaintiff and the Class)

112. Plaintiff realleges all previous paragraphs as if fully set forth below.

113. Plaintiff's and Class Members' Private Information was entrusted to Defendant, directly or through entities such as Columbus Regional, on the premise and with the understanding that Defendant would safeguard it, use it for authorized purposes only, and not disclose it to unauthorized third parties.

114. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

115. Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

116. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices.

After all, Defendant actively sought and obtained Plaintiff's and Class Members' Private Information.

117. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized access;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

118. Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

119. Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

120. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

121. Defendant's duty to use reasonable security measures also arose from its undertaking to receive, maintain, and safeguard confidential information concerning Plaintiff and

the Class in connection with its legal services. Plaintiff and Class Members depended on Defendant to protect information in its exclusive custody and control.

122. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

123. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive Private Information.

124. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

125. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

126. On information and belief, Defendant violated its applicable duties under HIPAA by failing to use reasonable measures to protect PHI it received and maintained as a business associate and by failing to comply with the safeguards described above.

127. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private

Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

128. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

129. Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

130. Defendant breached these duties as evidenced by the Data Breach.

131. On information and belief, Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

132. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injuries.

133. Defendant further breached its duties by failing to provide prompt and adequate information about the Data Breach after learning of the unauthorized access, thereby impairing affected individuals' ability to mitigate its consequences.

134. On information and belief, Plaintiff's and Class Members' Private Information was accessed, exfiltrated, and disclosed to unauthorized persons because of the Data Breach.

135. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including the loss of confidentiality and control over their Private Information, diminution in its value, a substantially increased risk of fraud and identity theft, and the need for future protective measures.

136. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

137. Defendant's breach of its common-law duties and its negligence actually and proximately caused Plaintiff and Class Members injury and damages, including the theft and improper disclosure of their Private Information, loss of its confidentiality and value, and the continuing burden of protecting against the consequences of the Data Breach. These injuries are ongoing, and Plaintiff and Class Members continue to face them.

**COUNT II**
**Negligence Per Se**
(On Behalf of Plaintiff and the Class)

138. Plaintiff realleges all previous paragraphs as if fully set forth below.

139. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

140. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive Private Information.

141. Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

142. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

143. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

144. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

145. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

146. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

147. On information and belief, Defendant violated applicable HIPAA duties by failing to use reasonable measures to protect the PHI it received and maintained as a business associate

and by failing to comply with the safeguards detailed above. This conduct was particularly unreasonable given the sensitivity of patient information and the foreseeable consequences of its exposure.

148. Defendant's violations of the statutory and regulatory duties described above constitute negligence per se. Plaintiff and Class Members are within the class of persons those data-protection requirements are intended to protect, and the unauthorized exposure and resulting injuries are the types of harm those requirements are intended to prevent.

149. As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed supra).

## COUNT III
**Breach of Implied Contract**
(On Behalf of Plaintiff and the Class)

150. Plaintiff realleges all previous paragraphs as if fully set forth below.

151. On information and belief, Defendant entered into contracts with entities including Columbus Regional under which Defendant received and maintained confidential records concerning Plaintiff and Class Members. Plaintiff and Class Members were intended third-party beneficiaries of the confidentiality and data-security undertakings associated with those records.

152. In connection with its engagement, Defendant accepted Private Information furnished by Columbus Regional and other entities for use in providing legal services. The circumstances of that transfer and Defendant's undertaking to hold confidential records gave rise to implied promises that Defendant would use reasonable safeguards and restrict disclosure to authorized purposes.

153. On information and belief, the confidentiality and data-security provisions of those agreements, including applicable business-associate undertakings, were made for the direct benefit

of the individuals whose confidential information Defendant agreed to protect. Protection of Plaintiff's and Class Members' information was a direct objective of those provisions.

154. On information and belief, the entities furnishing Plaintiff's and Class Members' records compensated Defendant for services that included maintaining the confidentiality and security of information entrusted to it.

155. Plaintiff and Class Members reasonably understood that their confidential records would be protected by adequate cybersecurity measures consistent with applicable law and the obligations undertaken by the entities receiving those records.

156. On information and belief, the contracting entities furnished records and consideration, and Defendant accepted them and undertook to provide its services subject to the associated confidentiality and data-security obligations.

157. In turn, Defendant expressly or impliedly agreed to protect the Private Information and not disclose it to unauthorized persons.

158. Defendant's public statements acknowledge that its processing of information during legal representations is governed by client agreements and professional responsibilities. On information and belief, its agreements concerning the records at issue required reasonable protection of that information.

159. Implicit in these agreements was that Defendant would provide prompt and adequate notification of unauthorized access to or theft of the Private Information it accepted.

160. On information and belief, Columbus Regional and the other entities furnishing confidential records would not have entrusted those records to Defendant in the absence of its undertaking to protect them.

161. On information and belief, the entities furnishing Plaintiff's and Class Members' records performed their obligations under the relevant agreements, and all conditions to Defendant's performance occurred or were excused.

162. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

163. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

164. Defendant materially breached these contractual undertakings by:

a. failing to safeguard their information;

b. failing to provide prompt and adequate notification of the intrusion into its computer systems that compromised such information;

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendant created, received, maintained, and transmitted.

165. In these and other ways, Defendant violated its duty of good faith and fair dealing.

166. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed supra).

167. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

168. As intended beneficiaries of the data-protection undertakings described above, Plaintiff and Class Members are entitled to recover damages resulting from Defendant's breach in an amount to be determined at trial.

**COUNT IV**
**Unjust Enrichment**
(On Behalf of Plaintiff and the Class)

169. Plaintiff realleges all previous paragraphs as if fully set forth below.

170. This claim is pleaded in the alternative to the breach of implied contract claim.

171. Plaintiff and Class Members conferred a benefit upon Defendant through the Private Information furnished to it. Defendant used that information in performing and obtaining compensation for its legal services.

172. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

173. Plaintiff and Class Members reasonably understood that entities receiving their confidential information, including Defendant, would use adequate cybersecurity measures to protect it in accordance with applicable law and the obligations associated with receiving that information.

174. Defendant enriched itself by saving costs it reasonably should have expended on security measures to protect Plaintiff's and Class Members' Private Information.

175. On information and belief, instead of providing reasonable security and retention practices, Defendant avoided data-security expenses and retained the benefit of using confidential

information without furnishing the protections that information required. Plaintiff and Class Members suffered as a direct and proximate result.

176. Under principles of equity and good conscience, Defendant should not be permitted to retain the benefits attributable to its use of Plaintiff's and Class Members' Private Information and the security costs it avoided while failing to adequately protect that information.

177. To the extent no enforceable contract provides a remedy for these benefits, Plaintiff and Class Members have no adequate remedy at law.

178. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## COUNT V
**Invasion of Privacy—Intrusion Upon Seclusion**
(On Behalf of Plaintiff and the Class)

179. Plaintiff realleges all previous paragraphs as if fully set forth below.

180. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

181. Defendant owed a duty to the individuals whose confidential information it received, including Plaintiff and the Class, to keep that information confidential.

182. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

183. The intrusion was into private records and affairs entitled to remain private. Plaintiff's and Class Members' confidential information was furnished to Defendant for limited purposes, with the expectation that it would be kept confidential and protected from unauthorized access or disclosure.

184. The unauthorized access to and acquisition of Plaintiff's and Class Members' confidential records constituted an intrusion into their private affairs of a kind highly offensive to a reasonable person.

185. On information and belief, despite its knowledge of the sensitivity of the records it held and the specific threat to law firms described above, Defendant consciously disregarded inadequate safeguards that left those records open to unauthorized access and disclosure.

186. Defendant's reckless disregard for the confidentiality of these records permitted the intrusion and interference with Plaintiff's and Class Members' private affairs.

187. Defendant knew or should have known that exposing confidential patient records and other Private Information through inadequate access controls and security practices would cause injury to the individuals to whom those records related.

188. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed supra).

189. And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

190. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information is still maintained by Defendant with its inadequate cybersecurity system and policies.

191. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for

monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

192. In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## COUNT VI
**Breach of Fiduciary Duty**
(On Behalf of Plaintiff and the Class)

193. Plaintiff realleges all previous paragraphs as if fully set forth below.

194. On information and belief, Defendant specifically undertook to receive and safeguard confidential patient records and other Private Information belonging to Plaintiff and Class Members. By accepting custody of that information and responsibility for its confidentiality, Defendant assumed a position of trust concerning its protection. The fiduciary duties asserted here arise from that limited undertaking and guardianship of confidential information.

195. Within the scope of that undertaking, Defendant had a duty to act for the benefit of the individuals whose confidential information it held by safeguarding their records, maintaining appropriate records of its possession and use of their information, and providing timely notification of unauthorized access or disclosure.

196. Given the highly sensitive nature of patient records and identifying information, Plaintiff and Class Members reasonably expected that any entity accepting custody of their records for restricted purposes would preserve their confidentiality and protect against unauthorized access.

197. On information and belief, Defendant breached these duties by failing to adequately encrypt or otherwise safeguard Plaintiff's and Class Members' Private Information and by failing to maintain reasonable access controls and security practices.

198. Defendant also breached these duties by failing to diligently detect and investigate the unauthorized access and provide timely, adequate information concerning the compromise of the records entrusted to it.

199. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed supra).

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

a. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

b. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

c. Awarding injunctive relief necessary to protect Plaintiff and the Class, including requiring Defendant to implement and maintain reasonable security safeguards for the Private Information it continues to hold;

d. Enjoining Defendant from continuing the inadequate data-security practices alleged herein;

e. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

f. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

g. Awarding attorneys' fees and costs, as allowed by law;

h. Awarding prejudgment and post-judgment interest, as provided by law;

i. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

j. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Date: October 9, 2026

Respectfully submitted,

By: */s/ Paul J. Doolittle*

Paul J. Doolittle ( SC Fed Bar No. 6012)
**POULIN WILLEY ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
T: (803) 222-2222
Paul.doolittle@poulinwilley.com
Cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*